1  Robert V. Prongay (SBN 270796)
2  Pavithra Rajesh (SBN 323055)
   **GLANCY PRONGAY & MURRAY LLP**
3  1925 Century Park East, Suite 2100
   Los Angeles, California 90067
4  Telephone: (310) 201-9150
   Facsimile: (310) 201-9160
5  Email: rprongay@glancylaw.com

6  Benjamin I. Sachs-Michaels
7  **GLANCY PRONGAY & MURRAY LLP**
   712 Fifth Avenue
8  New York, New York 10019
   Telephone: (212) 935-7400
9  Facsimile: (212) 756-3630
   Email: bsachsmichaels@glancylaw.com
10

11 *Counsel for Plaintiff*

12              **UNITED STATES DISTRICT COURT**

13            **NORTHERN DISTRICT OF CALIFORNIA**

14 ANTHONY ANDERSON, Derivatively on          Case No.
   Behalf of Nominal Defendant ZENDESK,
15 INC.,                                       **VERIFIED SHAREHOLDER**
                                               **DERIVATIVE COMPLAINT**
16          Plaintiff,

17     v.

18
   MIKKEL SVANE, ELENA GOMEZ,
19 NORMAN GENNARO, MICHELLE
   WILSON, CARL BASS, HILARIE
20 KOPLOW-MCADAMS, MICHAEL
   FRANDSEN, THOMAS SZKUTAK,
21 MICHAEL CURTIS, and CARYN
   MAROONEY,
22
23          Defendants.

24      and

25 ZENDESK, INC., a Delaware Corporation,

26
            Nominal Defendant,
27

28

Plaintiff Anthony Anderson ("Plaintiff"), by and through his undersigned attorneys, brings this derivative complaint for the benefit of nominal defendant, Zendesk, Inc. ("Zendesk" or the "Company"), against certain members of its Board of Directors (the "Board") and certain of its officers seeking to remedy defendants' breaches of fiduciary duties, insider trading (i.e. *Brophy* claim), and violations of § 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"). Plaintiff's allegations are based upon his personal knowledge as to himself and his own acts, and upon information and belief, developed from the investigation and analysis by Plaintiff's counsel, including a review of publicly available information, including filings by Zendesk with the U.S. Securities and Exchange Commission ("SEC"), press releases, news reports, analyst reports, investor conference transcripts, publicly available filings in lawsuits, and matters of public record.

## I.      NATURE AND SUMMARY OF THE ACTION

1.      Zendesk is a customer service software company that offers a platform and products to unify customer communication and customer data across disparate channels and departments.

2.      In early 2019, the Company reported strong demand for its products, leading to revenue growth of at least 38%, including in the Europe, Middle East, and Africa ("EMEA") and Asia-Pacific ("APAC") regions.  Zendesk also emphasized the importance of data security, given the nature of its products.  Though the Company warned that breaches of data security could cause Zendesk to lose customers, it suggested that its data was secure.

3.      On July 30, 2019, Zendesk disclosed that its sales growth in the EMEA and APAC regions "lagg[ed] other regions" in second quarter 2019.  Specifically, revenue growth in the EMEA region fell to 33% and growth in the APAC region fell to 31%.  Regarding fiscal 2019 financial guidance, Zendesk expected ongoing revenue growth of just 30% and free cash flow of just $35-$45 million (compared to prior guidance of $55-$65 million), citing increased vendor prepayments, capital expenditures, and acquisition costs.

4.      On this news, Zendesk's share price fell $9.56, or 10%, to close at $83.56 per share on July 31, 2019, on unusually high volume.

5.      Then, on October 2, 2019, in a blog post, Zendesk disclosed that it had experienced a data breach in 2016 involving 10,000 Support and Chat accounts that were activated prior to

November 1, 2016 and that Zendesk agents' email addresses, phone numbers, and passwords had been accessed.

6.      On this news, Zendesk's share price fell $2.90, or about 4%, to close at $69.81 per share on October 2, 2019, on unusually heavy trading volume.

7.      These revelations precipitated the filing of a securities class action in this District against Zendesk and certain of defendants, captioned *Reidinger v. Zendesk, Inc., et al.*, Case No. 3:19-cv-06968-CRB (the "Securities Class Action").

8.      Plaintiff did not make a litigation demand prior to filing this action because such demand would have been futile based upon the composition of the Board and the actions taken by the Board.  The Board is currently composed of seven members, all of whom are named in this action.  As alleged herein, Svane as Chief Executive Officer and Wilson, Frandsen, and Szkutak as members of the Audit Committee, knew that demand for the Company's products was declining yet allowed misleading statements to be disseminated.  Moreover, Svane sold nearly $20 million in Zendesk stock while in possession of material nonpublic information.  Thus, more than half the members would be interested in a demand to investigate their own wrongdoing.

## II.      JURISDICTION AND VENUE

9.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 in that this Complaint states a federal question: violations of Section 10(b) of the Securities Exchange Act of 1934.  This Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367(a).  This action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have.

10.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1401 because a substantial portion of the transactions and wrongs complained of herein occurred in this District, and the Defendants have received substantial compensation in this district by engaging in numerous activities that had an effect in this District.

### III.      PARTIES

**Plaintiff**

11.      Plaintiff Anthony Anderson purchased shares of Zendesk in February 2019 and has continuously owned his stock since that date.

**Nominal Defendant**

12.      Nominal Defendant Zendesk is a Delaware corporation with its principal executive offices located at 1019 Market Street, San Francisco, CA 94103.  The Company's stock trades on the New York Stock Exchange ("NYSE") under the symbol "ZEN."

**Defendants**

13.      Defendant Mikkel Svane ("Svane") co-founded Zendesk and has served as its Chief Executive Officer ("CEO") since August 2007 and as Chair of its Board of Directors since January 2014.  Svane is a defendant in the Securities Class Action.

14.      Defendant Elena Gomez ("Gomez") has served as Chief Financial Officer ("CFO") of the Company since May 2016.  Gomez is a defendant in the Securities Class Action.

15.      Defendant Norman Gennaro ("Gennaro") has served as President of Sales of the Company since November 2019.  Prior to that, he served as Senior Vice President, Worldwide Sales from January 2018 to November 2019.  Gennaro is a defendant in the Securities Class Action.

16.      Defendant Michelle Wilson ("Wilson") has served as a director of the Company since January 2014.  Wilson is a member of the Audit Committee.

17.      Defendant Carl Bass ("Bass") has served as a director of the Company since February 2016.

18.      Defendant Hilarie Koplow-McAdams ("Koplow-McAdams") has served as a director of the Company since September 2017.

19.      Defendant Michael Frandsen ("Frandsen") has served as a director of the Company since November 2017.  Frandsen is a member of the Audit Committee.

20.      Defendant Thomas Szkutak ("Szkutak") has served as a director of the Company since January 2019.  Szkutak is the Chair of the Audit Committee.

21.     Defendant Michael Curtis ("Curtis") has served as a director of the Company since April 2019.

22.     Defendant Caryn Marooney ("Marooney") served as a director of the Company from January 2014 to May 2020.

23.     The defendants named in ¶¶ 13-22 are sometimes referred to hereinafter as the "Individual Defendants."

## IV.     DUTIES OF THE INDIVIDUAL DEFENDANTS

24.     By reason of their positions as officers, directors, and/or fiduciaries of Zendesk and because of their ability to control the business and corporate affairs of Zendesk, at all relevant times, the Individual Defendants owed Zendesk and its shareholders fiduciary obligations of good faith, loyalty, and candor, and were required to use their utmost ability to control and manage Zendesk in a fair, just, honest, and equitable manner.   The Individual Defendants were required to act in furtherance of the best interests of Zendesk and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit.   Each director and officer of the Company owes to Zendesk and its shareholders a fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.

25.      The Individual Defendants, because of their positions of control and authority as directors and/or officers of Zendesk, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.   Because of their advisory, executive, managerial, and directorial positions with Zendesk, each of the Individual Defendants had knowledge of material non-public information regarding the Company.

26.     To discharge their duties, the officers and directors of Zendesk were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the Company.   By virtue of such duties, the officers and directors of Zendesk were required to, among other things:

a.  Exercise good faith to ensure that the affairs of the Company were conducted in an efficient, business-like manner so as to make it possible to provide the highest quality performance of their business;

b.  Exercise good faith to ensure that the Company was operated in a diligent, honest, and prudent manner and complied with all applicable federal and state laws, rules, regulations and requirements, and all contractual obligations, including acting only within the scope of its legal authority;

c.  Exercise good faith to ensure that the Company's communications with the public and with shareholders are made with due candor in a timely and complete fashion; and

d.  When put on notice of problems with the Company's business practices and operations, exercise good faith in taking appropriate action to correct the misconduct and prevent its recurrence.

## V.   SUBSTANTIVE ALLEGATIONS

### A.   Background

27.   Zendesk describes itself as a customer service software company that offers a platform and Software-as-a-Service ("SaaS") products to unify customer communication and customer data across disparate channels and departments. According to the Company's public filings, its products simplify the process of providing "omnichannel" customer service and engagement across self-service, phone calls, live chat, messaging, and email. Zendesk's "open" and "flexible" customer relationship management ("CRM") platform, Zendesk Sunshine, is built on the public cloud and open standards.

### B.   The Individual Defendants Caused the Company to Issue Materially Misleading Statements

28.   On February 5, 2019, after the market closed, defendants Svane, Gomez, Wilson, Bass, Koplow-McAdams, Frandsen, Szkutak, and Marooney caused Zendesk to issue a press release announcing its fourth quarter and full year 2018 financial results. According to the press release, fourth quarter "revenue increased 41% year over year to $172.2 million" and "GAAP operating loss

[was] $36.5 million." For the fiscal year, the Company reported "revenue [had] increased 39% year over year to $598.7 million" and "GAAP operating loss of $137.9 million." Moreover, the press release provided fiscal 2019 guidance, stating in relevant part:

**Outlook**

As of February 5, 2019, Zendesk provided guidance for the quarter ending March 31, 2019 and for the year ending December 31, 2019.

For the quarter ending March 31, 2019, Zendesk expects to report:
- Revenue in the range of $178.0-180.0 million
- GAAP operating income (loss) in the range of $(44.0)-(42.0) million, which includes share-based compensation and related expenses of approximately $38.2 million, amortization of purchased intangibles of approximately $2.2 million, and acquisition-related expenses of approximately $1.6 million

* * *

For the full year ending December 31, 2019, Zendesk expects to report:
- Revenue in the range of $795.0 - 805.0 million
- GAAP operating income (loss) in the range of $(154.0)-(149.0) million, which includes share-based compensation and related expenses of approximately $154.2 million, amortization of purchased intangibles of approximately $8.8 million, and acquisition-related expenses of approximately $4.0 million

29.    The same day, defendants Svane, Gomez, Wilson, Bass, Koplow-McAdams, Frandsen, Szkutak, and Marooney caused Zendesk to publish a Shareholder Letter, which emphasized: "For the full-year 2018, [Zendesk] delivered 39% revenue growth—an acceleration compared to 38% growth for full-year 2017—and increased [its] operating cash flow margin by approximately three percentage points and free cash flow margin by approximately two percentage points compared to full-year 2017." Suggesting that the Company would continue on that trajectory, the Shareholder Letter stated: "Around the world, companies large and small are seeking to transform their businesses through customer experience*, and that trend is driving strong demand for our products*," adding that, "[i]n 2019, *we will continue to capitalize on this trend.*" The Shareholder Letter noted that, "[w]ith customers in more than 160 countries and territories and approximately half of our revenue outside of the U.S., *we are seeing strong global demand and*

*revenue growth in every region*," noting that for FY18 "revenue [had] increased . . . 43% in EMEA [and] 47% in APAC."

30.     The above statements in ¶¶ 28-29 were materially misleading because they failed to disclose that declining demand for Zendesk's SaaS products, particularly in the EMEA and APAC regions, adversely impacted the Company's financial prospects.

31.     On February 14, 2019, defendants Svane, Gomez, Wilson, Bass, Koplow-McAdams, Frandsen, Szkutak, and Marooney caused Zendesk to file its annual report on Form 10-K with the SEC for the period ended December 31, 2018 (the "2018 10-K").   The report was signed by defendants Svane, Gomez, Wilson, Bass, Koplow-McAdams, Frandsen, Szkutak, and Marooney and affirmed the previously reported financial results.  Regarding "key characteristics" of Zendesk's "Technology," the 2018 10-K stated, in relevant part:

- Security. Each of our products are [sic] designed to host a large quantity of customer data. *We maintain a comprehensive security program designed to help safeguard the security and integrity of our customers' data. We regularly review our security program. In addition, we regularly obtain third-party security audits and examinations of our technical operations and practices covering data security.*

32.     The 2018 10-K purported to warn that "breaches of data security . . . could have an adverse effect on [Zendesk's] future operating results," and could cause it to "lose existing customers or fail to attract new customers" or to "incur significant liabilities" *if* its data systems were breached.   Similarly, the 2018 10-K stated that "data security concerns *could* result in additional costs and liabilities to [it] or inhibit sales of [its] products" because its "products can be used to collect and store personal information."   As a result,  "the costs of compliance with, and other burdens imposed by, the laws, regulations, and policies that are applicable to the businesses of [its] customers may limit the use and adoption of, and reduce the overall demand for, [its] products."

33.     The above statements in ¶¶ 31-32 were materially misleading because they concealed that Zendesk's clients had been subject to data breaches since as early as 2016.

34.     On February 25, 2019, at the JMP Securities Technology Conference, defendant Gennaro discussed changes that had been implemented during 2018 to execute sales to enterprise customers.  Specifically, he stated:

[Gennaro:] You have to think about the enterprise accounts that you're working with in a different way and support them in a different manner than you would a Velocity play. ***And so that's the differentiation as we moved up market in 2018 to kind of understand that, that is really the case and start putting in the people and activities in place to make that happen.***

[Analyst:] Give us a couple of concrete examples. So what did you have to put in, what kind of people or what kind of activity?

\* \* \*

[Gennaro:] ***From the sales side, which you'll see is, obviously, you need to have account reps that are dedicated to a specific enterprise and making sure that they understand the terminology that those companies use and the concerns that they would have.***

[Analyst:] And you didn't have that before?

[Gennaro:] ***Well, we had it in pockets. But this is – It just allowed us to kind of build out and expand it.***

35.     The above statements in ¶ 34 were materially misleading because they failed to disclose that declining demand for Zendesk's SaaS products, particularly in the EMEA and APAC regions and including enterprise customers, adversely impacted the Company's financial prospects.

36.     On April 30, 2019, defendants Svane, Gomez, Wilson, Bass, Koplow-McAdams, Frandsen, Szkutak, Marooney, and Curtis caused Zendesk to issue a press release announcing its first quarter 2019 financial results.  Therein, Zendesk reported that "revenue increased 40% year over year to $181.5 million" and "GAAP operating loss of $43.9 million."  The press release also increased its fiscal 2019 guidance, stating in relevant part:

**Outlook**

As of April 30, 2019, Zendesk provided guidance for the quarter ending June 30, 2019 and updated its guidance for the year ending December 31, 2019.

For the quarter ending June 30, 2019, Zendesk expects to report:
- Revenue in the range of $191-193 million

- GAAP operating income (loss) in the range of $(44)-(42) million, which includes share-based compensation and related expenses of approximately $41 million, amortization of purchased intangibles of approximately $2 million, and acquisition-related expenses of approximately $1 million

\* \* \*

For the full year ending December 31, 2019, Zendesk expects to report:
- Revenue in the range of $802-810 million
- GAAP operating income (loss) in the range of $(164.0)-(160) million, which includes share-based compensation and related expenses of approximately $165 million, amortization of purchased intangibles of approximately $9 million, and acquisition-related expenses of approximately $4 million

37.     The same day, defendants Svane, Gomez, Wilson, Bass, Koplow-McAdams, Frandsen, Szkutak, Marooney, and Curtis caused Zendesk to publish a Shareholder Letter, which stated that the Company had started "2019 by delivering 40% revenue growth in the quarter (year over year), up nearly two percentage points compared to the year-over-year growth achieved for the first quarter of 2018."   The letter emphasized that "[d]emand for [Zendesk's] products remains strong as companies around the world, large and small, seek to transform their businesses by adopting modern software architectures and applications" and that "growth is driven by favorable global market trends."   The Shareholder Letter also noted that Zendesk "had solid revenue growth in every region in the first quarter of 2019, with revenue up . . . 38% in EMEA [and] 39% in APAC . . . compared to a year ago."

38.     The above statements in ¶¶ 36-37 were materially misleading because they failed to disclose that declining demand for Zendesk's SaaS products, particularly in the EMEA and APAC regions, adversely impacted the Company's financial prospects.

39.     On May 2, 2019, defendants Svane, Gomez, Wilson, Bass, Koplow-McAdams, Frandsen, Szkutak, Marooney, and Curtis caused Zendesk to file its quarterly report on Form 10-Q with the SEC for the period ended March 31, 2019 (the "1Q19 10-Q").   The report was signed by defendant Gomez and contained statements substantially similar to those identified in ¶¶ 31-32.

40.     The above statements in ¶ 39 were materially misleading because they failed to disclose that Zendesk's clients had been subject to data breaches since as early as 2016.

---

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

9

C.      **The Truth Begins to Emerge**

41.     On July 30, 2019, after the market closed, Zendesk announced its second quarter 2019 financial results, reporting that its net losses of $54.5 million, or $0.50 per share, compared to $34.4 million, or $0.33 per share, reported in the prior year period.  In addition, the Company's revenues had increased to $194.6 million in second quarter 2019, compared to $141.9 million in the prior year period, representing 37% growth rate, which is well below the growth rate for the past eight quarters ranging between 38% and 41%.  Zendesk disclosed that its sales growth in the EMEA and APAC regions "lagg[ed] other regions."  Specifically, growth in the EMEA region fell to 33% and growth in the APAC region fell to 31% in second quarter 2019, due to a mix of macro and operational issues.  Regarding fiscal 2019 financial guidance, Zendesk expected ongoing revenue growth of 30% and free cash flow of $35-$45 million (compared to prior guidance of $55-$65 million), citing increased vendor prepayments, capital expenditures, and acquisition costs.

42.     On this news, Zendesk's share price fell $9.56, or 10%, to close at $83.56 per share on July 31, 2019, on unusually high volume.

43.     Then on October 2, 2019, in a blog post, Zendesk disclosed that it had experienced a data breach in 2016 involving 10,000 Support and Chat accounts that were activated prior to November 1, 2016.  Specifically, Zendesk agents' email addresses, phone numbers, and passwords had been accessed.  A third party had alerted the Company on September 24, 2019 of the breach, and Zendesk had engaged an outside team of forensic experts to validate the claims and to determine exactly what data was accessed.  Moreover, Zendesk had implemented a forced reset of passwords for those users that were activated prior to November 1, 2016 and who had not updated their passwords since that time.

44.     On this news, Zendesk's share price fell $2.90, or about 4%, to close at $69.81 per share on October 2, 2019, on unusually heavy trading volume.

**D.    Defendants Svane, Gomez, and Gennaro Sold Nearly $25 Million in Zendesk Stock While in Possession of Material Non-Public Information**

Svane

45.    Defendant Svane is the Company's Chief Executive Officer and Chairman of its Board of Directors with a highly sophisticated understanding of the Company's results and their import.

46.    As set forth herein, defendant Svane possessed material negative information which he knew was being concealed from investors.  Defendant Svane consciously acted to exploit his knowledge by selling over $19.67 million of Zendesk stock to his substantial benefit, as follows:

| Date | Shares Sold | Price | Proceeds |
|------|-------------|-------|----------|
| 2/19/2019 | 50,000 | $78.61 | $3,930,410 |
| 5/15/2019 | 50,000 | $84.58 | $4,287,647 |
| 8/15/2019 | 50,000 | $74.86 | $3,748,053 |
| 8/20/2019 | 100,000 | $77.04 | $7,704,120 |
| | **250,000** | | **$19,670,230** |

47.    Defendant Svane thus used his fiduciary position to enrich himself and failed to discharge his duties by causing the Company to candidly reveal the truth of its business condition.

Gomez

48.    Defendant Gomez is the Company's Chief Financial Officer with a highly sophisticated understanding of the Company's results and their import.

49.    As set forth herein, defendant Gomez possessed material negative information which she knew was being concealed from investors.  Defendant Gomez consciously acted to exploit her knowledge by selling over $3 million of Zendesk stock to her substantial benefit, as follows:

| Date | Shares Sold | Price | Proceeds |
|------|-------------|-------|----------|
| 2/20/2019 | 500 | $78.06 | $39,030 |
| 2/21/2019 | 5,500 | $76.58 | $421,190 |
| 3/20/2019 | 5,500 | $83.54 | $459,470 |
| 5/16/2019 | 455 | $87.09 | $39,626 |
| 5/20/2019 | 5,500 | $86.51 | $475,805 |
| 6/20/2019 | 5,000 | $91.79 | $458,950 |
| 7/22/2019 | 5,000 | $91.21 | $456,050 |
| 8/20/2019 | 5,000 | $76.60 | $383,000 |
| 9/20/2019 | 4,500 | $77.53 | $348,885 |
| | **36,955** | | **$3,082,006** |

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

11

50.    Defendant Gomez thus used her fiduciary position to enrich herself and failed to discharge her duties by causing the Company to candidly reveal the truth of its business condition.

Gennaro

51.    Defendant Gennaro served as Senior Vice President of Worldwide Sales of the Company at all relevant times.

52.    As set forth herein, defendant Gennaro possessed material negative information which he knew was being concealed from investors.  Defendant Gennaro consciously acted to exploit his knowledge by selling over $1 million of Zendesk stock to his substantial benefit, as follows:

| Date | Shares Sold | Price | Proceeds |
|---|---|---|---|
| 2/11/2019 | 6,820 | $77.00 | $525,140 |
| 2/20/2019 | 752 | $78.06 | $58,701 |
| 3/19/2019 | 753 | $83.41 | $62,808 |
| 4/17/2019 | 753 | $82.01 | $61,754 |
| 5/17/2019 | 753 | $88.16 | $66,384 |
| 6/19/2019 | 752 | $88.42 | $66,492 |
| 7/17/2019 | 753 | $91.96 | $69,246 |
| 8/19/2019 | 753 | $77.52 | $58,373 |
| 9/18/2019 | 753 | $76.69 | $57,748 |
| | 12,842 | | $1,026,646 |

53.    Defendant Gennaro thus used his fiduciary position to enrich himself and failed to discharge his duties by causing the Company to candidly reveal the truth of its business condition.

## VI.    DAMAGES TO THE COMPANY

54.    As a direct and proximate result of the Individual Defendants' conduct, Zendesk has been seriously harmed and will continue to be.  Such harm includes, but is not limited to:

a.    Fees for legal and professional services incurred in connection with the Securities Class Action and investigation of the data breach;

b.    Any funds paid to settle the Securities Class Action; and

c.    Costs incurred from compensation and benefits paid to the defendants who have breached their duties to Zendesk.

55.    In addition, Zendesk's business, goodwill, and reputation with its business partners, regulators, and shareholders have been gravely impaired.  The Company still has not fully admitted

the nature of its false statements and the true condition of its business.  The credibility and motives of management are now in serious doubt.

56.    The actions complained of herein have irreparably damaged Zendesk's corporate image and goodwill.  For at least the foreseeable future, Zendesk will suffer from what is known as the "liar's discount," a term applied to the stocks of companies who have been implicated in illegal behavior and have misled the investing public, such that Zendesk's ability to raise equity capital or debt on favorable terms in the future is now impaired.

## VII.    DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

57.    Plaintiff brings this action derivatively in the right and for the benefit of Zendesk to redress injuries suffered, and to be suffered, by Zendesk as a direct result of breaches of fiduciary duty by the Individual Defendants, insider trading, and violations of Section 10(b) of the Exchange Act.  Zendesk is named as a nominal defendant solely in a derivative capacity.  This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

58.    Plaintiff will adequately and fairly represent the interests of Zendesk in enforcing and prosecuting its rights.

59.    Plaintiff has continuously been a shareholder of Zendesk at times relevant to the wrongdoing complained of and is a current Zendesk shareholder.

60.    When this action was filed, Zendesk's Board of Directors consisted of seven directors: defendants Svane, Wilson, Bass, Koplow-McAdams, Frandsen, Szkutak, and Curtis. Plaintiff did not make any demand on the Board to institute this action because such a demand would be a futile, wasteful, and useless act, for the reasons set forth below.

**Defendant Svane**

61.    At all relevant times, Svane was the Company's CEO, and therefore was not independent under NYSE listing rules.  As an employee, Svane derives substantially all of his income from his employment with Zendesk, thus could not disinterestedly consider a demand for action that might require him to sue the directors that control his continued employment and/or fellow members of management with whom he works on a day-to-day basis.  As alleged herein, Svane sold nearly $20 million in Zendesk stock while in possession of material nonpublic

information regarding the deteriorating demand for the Company's products. Svane personally issued the misleading statements alleged herein. As a result, Svane would be interested in a demand regarding his own wrongdoing, and demand is futile as to him.

**Defendants Wilson, Frandsen, and Szkutak**

62. Wilson, Frandsen, and Szkutak served as the members of the Audit Committee at all relevant times. As such, they are responsible for the effectiveness of the Company's internal controls, the integrity of its financial statements, and its compliance with laws and regulations. In their capacities as Audit Committee members, Wilson, Frandsen, and Szkutak reviewed and approved the disclosures regarding the Company's fiscal 2019 forecast. As alleged herein, Wilson, Frandsen, and Szkutak failed to ensure the integrity of the Company's internal controls, allowing the materially misleading statements to be disseminated in Zendesk's SEC filings and other disclosures. Thus, Wilson, Frandsen, and Szkutak breached their fiduciary duties and are not disinterested, and demand is excused as to them.

**Defendants Svane, Wilson, Bass, Koplow-McAdams, Frandsen, and Szkutak**

63. Svane, Wilson, Bass, Koplow-McAdams, Frandsen, and Szkutak each are responsible for the issuance of the misleading disclosures and omissions in the 2018 10-K, having signed and issued the 10-K. When Svane, Wilson, Bass, Koplow-McAdams, Frandsen, and Szkutak signed the 2018 10-K, they knew that the Company was experiencing undisclosed negative trends in its core business. By intentionally issuing disclosures that misrepresented the Company's results, Svane, Wilson, Bass, Koplow-McAdams, Frandsen, and Szkutak breached their fiduciary duties and face a substantial likelihood of liability.

64. Additionally, demand is excused as to Svane, Wilson, Bass, Koplow-McAdams, Frandsen, and Szkutak in connection with the insider selling of Svane, Gomez, and Gennaro. The material negative nonpublic information known to Svane, Gomez, and Gennaro when they sold their stock is the same information as was known to Svane, Wilson, Bass, Koplow-McAdams, Frandsen, and Szkutak when they signed and issued the 2018 Form 10-K. Svane, Wilson, Bass, Koplow-McAdams, Frandsen could not disinterestedly investigate allegations that Svane, Gomez, and Gennaro had traded on nonpublic information because they are alleged to have concealed the same

1   information, and finding that Svane, Gomez, and Gennaro had traded on such information would be

2   admitting that indeed the information had been concealed, and was known by the Board and

3   management when they issued the 2018 10-K.  As a result, demand is excused in connection with

4   the *Brophy* claim alleged herein.

### COUNT I

**Against the Individual Defendants for Breach of Fiduciary Duty**

7   65.   Plaintiff incorporates by reference and realleges each and every allegation contained

8   above, as though fully set forth herein.

9   66.   Each Individual Defendant owes and owed to the Company the duty to exercise

10  candor, good faith, and loyalty in the management and administration of Zendesk's business and

11  affairs, particularly with respect to issues as fundamental as public disclosures.

12  67.   The Individual Defendants' conduct set forth herein was due to their intentional or

13  reckless breach of the fiduciary duties they owed to the Company.  The Individual Defendants

14  intentionally or recklessly breached or disregarded their fiduciary duties to protect the rights and

15  interests of Zendesk.

16  68.   In breach of their fiduciary duties owed to Zendesk, the Individual Defendants

17  willfully participated in and caused the Company to expend unnecessarily its corporate funds,

18  rendering them personally liable to the Company for breaching their fiduciary duties.

19  69.   In particular, the Individual Defendants knowingly or recklessly made untrue

20  statements and/or permitted the Company's public filings, disclosures, and statements to

21  misleadingly represent the demand for Zendesk's products.

22  70.   As a direct and proximate result of the Individual Defendants' breaches of their

23  fiduciary obligations, Zendesk has sustained and continues to sustain significant damages.

24  Including direct monetary damages, exposure to liability from securities litigation and a loss of

25  goodwill in the capital markets.  As a result of the misconduct alleged herein, defendants are liable

26  to the Company.

27

28

# COUNT II

## Against Svane, Gomez, and Gennaro – *Brophy* Claim

71.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

72.     As alleged above, Svane, Gomez, and Gennaro are fiduciaries of Zendesk, possessed material, non-public information of Zendesk, and used that information improperly to profit from sales of Zendesk stock. When Svane, Gomez, and Gennaro directed the stock sales set forth above, they were motivated to do so, in whole or in part, by the substance of the material, non-public information they possessed, and they acted with scienter.

73.     When Svane, Gomez, and Gennaro sold their Zendesk stock, they knew that the investing public was unaware of the negative material information that they possessed. They also knew that if the information were disclosed, the market price of Zendesk stock would be significantly lower. Svane, Gomez, and Gennaro timed their stock sales to take advantage of the investing public's ignorance of the concealed material facts and obtain a higher price for the stock they sold. They thereby benefitted by misappropriating Zendesk's non-public information.

74.     Plaintiff has no adequate remedy at law.

# COUNT III

## Against Svane, Gomez, and Gennaro for Contribution
## for Violations of Sections 10(b) and 21D of the Exchange Act

75.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

76.     Defendants Svane, Gomez, and Gennaro are named as defendants in related securities class actions.  The conduct of these Defendants, as described herein, has exposed the Company to significant liability under various federal and state securities laws by their disloyal acts.

77.     Zendesk is named as a defendant in related securities class actions that allege and assert claims arising under § 10(b) of the Exchange Act.  The Company is alleged to be liable to private persons, entities and/or classes by virtue of many of the same facts alleged herein. If Zendesk is found liable for violating the federal securities laws, the Company's liability will arise in whole

or in part from the intentional, knowing, or reckless acts or omissions of all or some of the Defendants as alleged herein, who have caused the Company to suffer substantial harm through their disloyal acts. The Company is entitled to contribution and indemnification from these Defendants in connection with all claims that have been, are, or may be asserted against the Company by virtue of their wrongdoing.

78.     As officers, directors and otherwise, Defendants Svane, Gomez, and Gennaro had the power or ability to, and did, control or influence, either directly or indirectly, Zendesk's general affairs, including the content of its public statements, and had the power or ability to directly or indirectly control or influence the specific corporate statements and conduct that violated § 10(b) of the Exchange Act and SEC Rule 10b-5.

79.     Defendants Svane, Gomez, and Gennaro are liable under § 21D of the Exchange Act, which governs the application of any private right of action for contribution asserted pursuant to the Exchange Act.

80.     Defendants Svane, Gomez, and Gennaro have damaged the Company and are liable to the Company for contribution.

81.     No adequate remedy at law exists for Plaintiff by and on behalf of the Company.

### **PRAYER FOR RELIEF**

WHEREFORE, plaintiff, on behalf of Zendesk, demands judgment as follows:

A.     Declaring that plaintiff may maintain this action on behalf of Zendesk and that plaintiff is an adequate representative of the Company;

B.     Against all of the defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the defendants' breaches of fiduciary duties, waste of corporate assets, and unjust enrichment;

C.     Declaring that Defendants have breached and/or aided and abetted the breach of their fiduciary duties to Zendesk

D.     Directing Zendesk to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect Zendesk and its stockholders from a repeat of the damaging events described herein, including, but not limited to,

---

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

17

putting forward for stockholder vote, resolutions for amendments to the Company's Bylaws or Articles of Incorporation and taking such other action as may be necessary to place before stockholders for a vote of the following corporate governance policies:

    1.  a proposal to strengthen the Company's controls over financial reporting;

    2.  a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater stockholder input into the policies and guidelines of the Board;

    3.  a proposal to strengthen Zendesk's oversight of its disclosure procedures;

    4.  a provision to control insider transactions; and

    5.  a provision to permit the stockholders of Zendesk to nominate at least three candidates for election to the Board;

E.          Extraordinary equitable and/or injunctive relief as permitted by law, equity, and state statutory provisions sued hereunder, including attaching, impounding, imposing a constructive trust on, or otherwise restricting the proceeds of defendants' trading activities or their other assets so as to assure that plaintiff on behalf of Zendesk has an effective remedy;

F.          Awarding to Zendesk restitution from defendants, and each of them, and ordering disgorgement of all profits, benefits, and other compensation obtained by the defendants;

G.          Awarding to plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

H.          Granting such other and further relief as the Court deems just and proper.

### JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), plaintiff a trial by jury.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

---

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

18

1    DATED: June 2, 2020                    **GLANCY PRONGAY & MURRAY LLP**

2                                           By:   *s/ Robert V. Prongay*

3                                           Robert V. Prongay
                                            Pavithra Rajesh
4                                           1925 Century Park East, Suite 2100
                                            Los Angeles, CA 90067
5                                           Telephone: (310) 201-9150
                                            Facsimile: (310) 201-9160
6                                           Email: rprongay@glancylaw.com

7
                                            Benjamin I. Sachs-Michaels
8                                           712 Fifth Avenue
                                            New York, NY 10019
9                                           Telephone: (212) 935-7400
                                            Facsimile: (212) 756-3630
10                                          Email: bsachsmichaels@glancylaw.com

11
                                            *Attorneys for Plaintiff Anthony Anderson*
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>VERIFICATION</u>

I, Anthony Anderson, do hereby verify that I am a holder of common stock of Zendesk, Inc., and was a holder of such common stock at the time of the wrongs complained of in the foregoing Verified Shareholder Derivative Complaint ("Complaint").  I have authorized the filing of the Complaint.  I have reviewed the Complaint.  All of the averments contained in the Complaint regarding me are true and correct upon my personal knowledge and, with respect to the remainder of the averments, are true and correct to the best of my knowledge, information, and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Date:  6/1/2020

DocuSigned by:

EB1365241A504C4...

Anthony Anderson